IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 09-CV-01680-DME-MEH

CORUM REAL ESTATE GROUP, INC.
AND 1800 MARKET INVESTORS, LLC,

   Plaintiffs,

v.

BLACKROCK REALTY ADVISORS, INC.
AND 1800 MARKET TOWER LLC,

   Defendants

      Consolidated With

Civil Action No. 09-CV-02804-DME-BNB

1800 MARKET TOWER LLC,

   Plaintiff,

v.

V. MICHAEL KOMPPA,
   Defendant.

---

**ORDER DENYING DEFENDANT KOMPPA'S MOTION TO DISMISS**

---

  Plaintiff 1800 Market Tower ("Tower") brought this breach of contract suit against Defendant V. Michael Komppa on December 1, 2009. Komppa moved to dismiss Tower's claim for Breach of Guaranty for Borrower's Misrepresentations on the ground that it fails to state a claim upon which relief can be granted. For the reasons that follow, Defendant's motion is denied.

## I. Factual background

This case arises from an agreement to develop a piece of property located in downtown Denver. The events surrounding that transaction are detailed more fully in this court's order granting in part and denying in part the motion to dismiss in the companion case Corum Real Estate Group, Inc. v. BlackRock Realty Advisors, Inc., 09-cv-1680-DME-MEH.

Tower's Complaint relates only to a series of loans it made to 1800 Market Investors, LLC ("Investors"), a company controlled by Komppa.[1] (Compl. at 1.) Komppa guaranteed these loans made to Investors and executed both a Deed of Trust and a Fourth Amended and Restated Guaranty of Recourse Obligations of Borrower. (Id. ¶ 6.) Tower made disbursements to Investors totaling $9,520,405 under three separate notes (collectively, the "Notes"). (Id. ¶ 7.) The loans made pursuant to these notes were nonrecourse loans unless a "Recourse Event," as defined in the Deed of Trust, occurred. (Id. ¶8.) Two events listed as "Recourse Events" in the Deed of Trust are relevant to this action: if Investors committed "fraud or material misrepresentation," and if Investors "fail[ed] while in monetary default to pay to [Tower] all rents, income and profits of and from the Mortgaged Property,[2] net of reasonable and customary operating expenses."

---

[1] For purposes of this motion to dismiss, the court accepts as true all well-pleaded facts contained in the Complaint. See Duran v. Carris, 238 F.3d 1268, 1270 (10th Cir. 2001).
[2] The "Mortgaged Property" refers to a parking lot that acted as security for the debt. (Id. at 1.)

(Id. (footnote added).) Upon the occurrence of a recourse event, Komppa would be personally liable to Tower for damages suffered by Tower. (Id.)

The Notes matured on April 30, 2007, and the parties entered into a Forbearance Agreement and Termination in which Tower agreed to forego its right to foreclose on the Mortgaged Property provided that Investors repaid the Notes in full before the expiration of the forbearance period. (Id. ¶ 9.) The Forbearance Agreement was amended and restated seven times, and each time Komppa executed the agreement to acknowledge the effect of the amendments on his obligations as the guarantor of the loans. (Id.) At the expiration of the forbearance period on July 13, 2008, Investors had still failed to repay the Notes in full. (Id. ¶ 10.)

Tower contends that two recourse events have triggered Komppa's personal liability as guarantor. First, Tower alleges that Investors has withheld income generated by the parking lot, and Komppa is thus personally liable for approximately $195,000 in withheld income. (Id. ¶ 20.) Komppa has not sought dismissal of this count of the Complaint. Second, Tower alleges that Komppa is personally liable because of material misrepresentations made by Investors to induce Tower into signing the Forbearance Agreement. (Id. ¶ 21.) In support of this claim, Tower cites three provisions of the Forbearance Agreement: first, Section 7 of the Forbearance Agreement stated that the notes "remain valid and binding obligations of [Investors], . . . and are hereby ratified and reaffirmed by [Investors]"; second, Investors admitted in Recital H of the Forbearance Agreement that the Notes were in default and that Investors had no defenses to the

3

default; finally, in Recital I, Investors acknowledged "that there is no agreement whatsoever . . . [as to] the formation of a joint venture" between Investors and Tower. (Id. ¶ 15.) According to Tower, these three statements are contradicted by Investors' claims in its lawsuit against Tower and by statements made by Investors in its opposition to the foreclosure. (Id. ¶¶ 16-17.) Tower thus claims that by making those three statements, Investors misrepresented its beliefs as to the validity of the notes and the nature of the relationship between Investors and Tower. (Id. ¶ 17.) Tower claims it was damaged as a result of these misrepresentations because it otherwise would have foreclosed on the property in 2007, when the property was worth significantly more than in 2009, which is when the property was in fact foreclosed upon. (Id. ¶ 19.)

Komppa has moved to dismiss Tower's claim for "Breach of Guaranty for Borrower's Misrepresentations." Komppa argues (1) that Tower did not plead fraud with particularity, as required by Federal Rule of Civil Procedure 9(b); (2) that Tower has not alleged that Investors made a false representation, and, even if it did, that the alleged representations relate to opinions rather than facts and are therefore not actionable; and (3) Tower did not adequately allege that it suffered damages as a result of the alleged representations.

## II. Discussion

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S.

544, 570 (2007)). While the court must accept as true all factual allegations in the Complaint, the court does not accept as true legal conclusions. Id. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. Accordingly, the court considers only "the well-pleaded, non-conclusory factual allegation[s]" to determine whether they "state a claim for relief that is plausible on its face." Id. at 1949-50.

### A. Particularity

In addition, a plaintiff raising a fraud claim must meet a heightened pleading standard. When "alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). "At a minimum, Rule 9(b) requires that a plaintiff set forth the who, what, when, where, and how of the alleged fraud." United States. ex rel. Sikkenga v. Regence Bluecross Blueshield of Utah, 472 F.3d 702, 726-27 (10th Cir. 2006) (quotations omitted). In addition, the complaint "must set forth the time, place, and contents of the false representation, the identity of the party making the false statements and the consequences thereof." Id. at 727 (quotations omitted).

Komppa argues that Tower failed to plead the fraudulent misrepresentation count with particularity. The court disagrees. The Complaint alleges that, on May 22, 2007, Investors stated, in the Forbearance Agreement, that Investors and Tower were not entering into a joint venture, that Investors remained bound by the terms of the Notes, and that Investors "had no objections or defenses to the loan default." (Compl. ¶ 15.)

According to the Complaint, these statements by Investors "directly contradict" allegations made by Investors in June 2009 both in their their lawsuit against Tower that the parties were joint venturers, and also contradict statements made by Investors in their opposition to Tower's foreclosure on the subject property. (Id. ¶¶ 16, 17.) These legal positions taken by Investors therefore "evidence that [Investors] made material misrepresentations to [Tower] in May 2007 concerning its belief as to the nature of the relationship between the parties and its belief as to the existence of defenses or claims against [Tower] under the Deed of Trust." (Id. ¶ 17.) As a result of these false representations made by Investors, Tower alleges that it agreed to forebear its right in May 2007 to foreclose on the subject property, which was worth millions more in May 2007 than it is today. (Id. ¶ 15.)

Komppa objects that Tower does not specifically identify which statements from June 2009 contradict the May 2007 statements. This argument has two flaws. First, the June 2009 statements are not the basis of the fraud claim—the May 2007 statements in the Forbearance Agreement are. Rather, the Complaint refers to the June 2009 statements for the purpose of showing why Tower believes the May 2007 statements were misrepresentations of Investors' actual understanding of the relationship between the parties. Second, while Tower does not quote from any of the June 2009 documents, Tower clearly alleges that Investors "alleg[ed] [its] belief that [Investors] and [Tower] were partners or joint venturers with regard to the Mortgaged Property" and that

6

Investors "contest[ed] [Tower's] right to foreclose on the Mortgaged Property." (Id. ¶ 16.)

In sum, then, the Complaint provides the "who, what, when, where, and how" of the alleged misrepresentations, see Sikkenga, 472 F.3d at 726-27, and alleges that Tower relied on those misrepresentations in entering the Forbearance Agreement and foregoing the right to foreclose on the property at a time when it was allegedly worth substantially more money than it is today. This satisfies Rule 9(b)'s heightened pleading requirement.

### B. False representation

Komppa initially contends that the Complaint does not cite a single false representation made by Investors because Tower contends that the alleged misrepresentations—that there was no joint venture and that the loan documents were valid—are actually true. Tower argues that the material misrepresentations at issue here are not the statements made by Investors, but rather Investors' representations that it believed those statements, when in fact it did not. This raises two related issues: first, whether Investors made any misrepresentation as to its opinion or belief; second, whether representations of opinion or belief are actionable as material misrepresentations.

Tower alleges that "[a]s part of the Forbearance Agreement, [Investors] represented 'that there was no agreement whatsoever between [Investors] and [Tower] relating to the acquisition or development of the Mortgaged property or the formation of a joint venture or other entity relating thereto.'" (Compl. ¶ 9.) According to Tower, this statement from the Forbearance Agreement provides "evidence that [Investors] made

7

material misrepresentations to [Tower] in May 2007 concerning its belief as to the nature of the relationship between the parties." (Id. ¶ 17; see also id. ¶ 18 (alleging that "it now is apparent [Investors] does not and never has shared" the belief that the parties were not joint venturers).) Komppa replies that the quotation taken from the Forbearance Agreement expresses no belief of Komppa's or Investors' as to the existence of a joint venture.

The court agrees with Tower that, by agreeing to and signing the Forbearance Agreement, Investors attested that it believed the statements contained in the Agreement. Komppa's argument, at its core, maintains that a party to an agreement does not take any position as to the veracity of the claims made within the agreement. However, it is axiomatic that a party agrees to the things contained in a written agreement that it signs. Investors (through Komppa) signed the Forbearance Agreement, and the Forbearance Agreement stated that no agreement existed between the parties as to the formation of a joint venture. According to the Complaint, Komppa did not mean that when he signed the Forbearance Agreement. Therefore, if, as is alleged in the Complaint, Komppa stated that he agreed that there was no joint venture when in fact he thought there was a joint venture, then he misrepresented his opinion by stating that there was no joint venture.

Komppa also argues that even if he made the representation that he thought no joint venture existed, that representation was merely a statement of belief or opinion which is not actionable for fraud. See, e.g., Brodeur v. Am. Home Assurance Co., 169 P.3d 139, 143 (Colo. 2007) (noting that "a statement of legal opinion [is] not a

8

misrepresentation of fact required to support a fraud claim"). However, the Complaint does not allege that Komppa's <u>expressed</u> opinion (i.e. that there was no joint venture) was a misrepresentation; rather, the Complaint alleges that Komppa's <u>actual</u> opinion differed from his expressed opinion, and so his expressed opinion was a misrepresentation. In other words, Tower alleges in the Complaint that Komppa misrepresented his opinion or belief, and "[i]t is a well established rule that an intentionally false affirmation of opinion or belief [can be] a misrepresentation of the state of mind of the speaker . . . ." <u>Fitzsimmons v. Honaker</u>, 485 P.2d 923, 926 (Colo. Ct. App. 1971). Thus, Tower's claim does not turn on the correctness of Komppa's opinion, but rather on whether Komppa provided "an intentionally false affirmation of [his] opinion," and the claim is actionable. <u>Id.</u>

### C. Causation

Finally, Komppa argues that Tower did not make a plausible showing that the alleged misrepresentations caused Tower damages. Specifically, Komppa states, "Plaintiff does not allege that the purported misrepresentations played any role in causing the property to drop in market value, as opposed to the market-wide credit shortage." (Mot. to Dismiss at 9.) This argument misunderstands Plaintiff's theory of damages, however. Plaintiff alleges in the Complaint that Komppa's misrepresentation caused Tower to enter into the Forbearance Agreement, and, by entering into that Agreement, Tower was damaged by waiving its right to foreclose on the property when the property was worth significantly more than it was in 2009. (Compl. ¶¶ 18, 19.) These allegations

9

"state a claim for relief that is plausible on its face" and are thus sufficient to survive a Rule 12(b)(6) motion. Iqbal, 129 S. Ct. at 1949-50.

**III.　Conclusion**

Defendant Komppa's Motion to Dismiss is therefore DENIED.

Dated this ___14th___ day of ___May___, 2010.

BY THE COURT:

s/ David M. Ebel

_____

U. S. CIRCUIT COURT JUDGE